May it please the Court, Raymond Sakai on behalf of Defendant and Appellant Los Angeles County Undersheriff Larry Waldie. Pursuant to the recent Supreme Court case of Pearson v. Kallinan, sauciers or sauciers, mandatory two-step qualified analysis is no longer mandatory. However, the Pearson opinion allowed discretion in the courts to apply the saucier two-step analysis or not. And in this case, it appears that applying the saucier two-step analysis would be helpful. So I would like to begin with the constitutional violation analysis. On the record, before the district court, defendant and appellate position is that there was no constitutional violation. The test in these cases governed by Elroyd and Browdy is whether or not political loyalty or the absence of adverseness is an appropriate requirement for the effective performance of the hypothesis. I had trouble seeing the application of Elroyd. It looked to me more like Pickering. Here's why. Elroyd isn't about trying to do harm to somebody. Elroyd is whether you can use political patronage in hiring. And this case is different. This is, you challenge the boss, we're going to launch a criminal investigation of you. You don't run against the boss in an election campaign, we're going to do a criminal investigation, your promotions are going to be blocked. And I don't really see why that isn't Pickering, rather than Elroyd. Why don't you address that? Well, in the Ninth Circuit, when the issue of whether or not the public employee who is claiming a violation of the First Amendment rights, if the issue is whether or not they are a policymaking or confidential employee, the test is, goes to the Elroyd branching line of cases, and rather than the Pickering balances, a balancing test, in the Elroyd test, it could be almost seen as a, as reaching the, as a determination. The distinction I'm getting at is whether you hire somebody is one kind of decision, and whether you punish somebody or try to do harm to them is another kind of decision. So are you arguing this only for failure to promote, then, for that adverse action? In other words, it seemed to me that the Elroyd grantee analysis would only relate to the failure to promote claim, because that is analogous to a hiring situation. The defendant, or the appellant, is arguing that would apply to all of the adverse employment actions. How is that possible? I understand it in the failure to promote context, but how about the involuntary transfer? I don't see why, unless you're arguing that a sergeant is a policymaker, I don't see why that would be relevant. The defendant's position is that under the, under the applicable test, it's whether or not the, I actually see your point, Your Honor, in that, you know, I would, I would agree that it would apply to the promotion context, because the, you know, the, because a plaintiff in this case was seeking a policymaking or a confidential position. And so the only evidence I saw of a lieutenant being a policymaking position was the, I guess, Lieutenant Ronda's declaration, that he never really seems to go so far as to say he's actually a policymaker. It was just, well, he's out there in the community and people look at him, but he didn't seem to have the same sorts of policymaking requirements that we've said under, or that the Supreme Court said under Brandy Elrod would make you a decisionmaker. Is there any other evidence besides the Ronda declaration? Well, the Ronda declaration is the evidence that defendants and appellants are, or defendants are relying on. But the definition of whether or not the, well, the test is whether or not the public employee is either a policymaker or seeking a confidential position that is a confidential position, which is a little bit different. In Ronda's declaration, it outlines the job responsibilities of the lieutenant as being broad, as implementing policies and affecting policies. And in order to satisfy the Elrod and Brandy test, it doesn't require that they're a policymaker in the Monell sense, that they actually go out and set policy where the municipality can be liable for. But it also includes confidential employees, where in the interest of good government, it's important that public officials can rely on high-level employees to implement their policies. And as to the constitutional liability. Can you talk about how Elrod gets you to ordering the subordinate to open a criminal investigation because his statements had embarrassed the boss, and then opening a, I think it was a discipline investigation? The criminal investigation, or the request for the criminal investigation. Yeah, I don't have any trouble with the idea that he's trying to get to be a policymaker. And at some level, if he gets there, he would be a policymaker, and the boss is entitled to have policymakers who will carry out departmental policy. We have cases to that effect. I wrote one or two myself. But I have trouble with the criminal investigation and the discipline investigation for embarrassing the boss. Yes, Your Honor. And the appellant's qualified immunity in favor of the appellant isn't reliant on Elrod to the extent that the first prong of the qualified immunity defense is whether or not there was a constitutional violation. And appellant has argued that, well, at least for the criminal investigation, that it was not, or the request for the criminal investigation, it was not reasonably likely to deter speech under the Quantz case. Did Gomez even know about this request for a criminal investigation? Is there evidence in the record as to that? Yes, there was. After the request, or during the course of the investigation, Mr. or Sergeant Gomez testified at his deposition that the lieutenant who's charged with the investigation notified him that there was an investigation and why there was an investigation, essentially to find out whether or not there was enough probable cause, if you will, to go and institute or open a further investigation, and whether or not he violated policy by, one, appearing or campaigning on duty, and, two, by not reporting suspected misconduct of. Just help me understand this. Now, I understand that Waldy asked Tamayo, right, about a criminal investigation. And I think the record showed that Tamayo said we should not do a criminal investigation, just a supervisory investigation. And the only thing I see here on appeal is with respect to the criminal investigation. So I was wondering whether that was communicated to Gomez or whether, in fact, the supervisory investigation and the criminal investigation are the same thing. They're not the same thing. The – and it is actually – thank you for clarifying this. It was a supervisory inquiry in which is – would be the very lowest level of an investigation, which is simply just to figure out if there is enough there to look into it any further. And the question of whether or not Mr. or Sergeant Gomez was alerted of whether or not there was a request for a criminal investigation, I – from the record, I believe that he learned of that request from a conversation with Captain Tamayo sometime after the fact. This sounds to me as though what happens is that the sheriff's loyal subordinate orders Tamayo, I want you to do a criminal investigation of this guy. He's embarrassed the boss. Tamayo says, I'm not going to stick my neck out with that. You know that's wrong, and refuses. And the boss's subordinate gets Tamayo to do the supervisory investigation, and Tamayo tells Gomez, I was ordered to do a criminal investigation. I refused. Now we're doing a supervisory investigation. Have I got the sequence of that right? It's not that clear from the record. There was in the – That's why I asked it. In the declaration, at least from what was before the court on the record, it is unclear whether or not and when Sergeant Gomez learned about the request for the criminal investigation. It may have very well been before the – Let me tell you why I'm asking this, and you'll be able to clarify it further. I'm thinking, suppose I was not a judge, and I was thinking of running against one of our senators or our congressmen, and I learned that the cops, maybe, or maybe the U.S. Attorney's Office being a more practical hypo, since they get appointed by the senator as a practical matter, are going to look into charging me with some sort of crime if I run against the senator. If I ran against him, they're going to try to charge me with a crime just to punish me and keep me from doing it again. That would deter me from running against the senator, even if it did drop down where they decided, oh, that will be too bad politically or something. Let's just go after his bar license or try to get some big environmental penalty against him or something like that. That would deter me. It looks to me like just the sort of thing Pickering is aimed at. That's why I asked you that initial question. But maybe I'm misunderstanding the facts, and that's why I need your help. In this case, it was a request for a criminal investigation, an unsuccessful request for a criminal investigation. The investigation was or the basis for the investigation was explained to Sergeant Gomez by his supervisor, his supervisor lieutenant. And the basis for the investigation was the violation of or the questionable violation of whether or not it was a violation of sheriff's department policy. In that context, you know, it would not be reasonable, it would not reasonably likely to deter the speech of the public employee, in this case, Sergeant Gomez. Now, the Sixth Circuit is saying this is a question of fact, so that we would have to remand it. What's the rule in the Ninth Circuit, or haven't we addressed that? I believe the rule is in the Walker case where it's a mixed question of fact and law. So the question of fact is what were the job duties of the public employee. And in this case, there is no disputed issue of fact as to the job duties. You're back on the failure to promote issue. I was still asking about the failed, whether a failed criminal investigation is reasonably likely to deter the protected versus amended activity. And the controlling case law would be the Kozatler case. But in a recent application by the Ninth Circuit in Quance, they applied the Kozatler standard, reasonably likely to deter, and found that a failed or delayed investigation did not satisfy that requirement. That's the unpublished decision. Yes, that was the unpublished decision. Can I also ask you about the involuntary transfer question? You seem to be indicating that, as a matter of law, when that much time passes, you can't show causality. But didn't Kozatler say that we can't have that sort of per se rule? How do you get around Kozatler on this point? On that point, I think the Defendant's argument is that actually that for the transfer, there was no personal involvement and hence no evidence of personal involvement and hence no constitutional violation. The evidence submitted by a plaintiff, an appellee, was a declaration saying that his commander said the ordered transfer came from above, but it was never clarified what above was. I see I'm running out of time, and I'd like to reserve the rest of my time for Reveto.  Good morning, Your Honor. Joseph Abrahami on behalf of the plaintiff Patrick Gomez. I'd like to first address the failure to promote argument and the argument that a lieutenant in the L.A. County Sheriff is a policymaker as a matter of law. And the problem with Defendant's position with regards to a lieutenant being a policymaker is that there are hundreds of lieutenants in the L.A. County Sheriff's Department. And besides the fact that there's a county ordinance saying that political affiliation cannot be considered and political retaliation in the L.A. County for that position is a misdemeanor, which is something that needs to be looked at as determining what the political affiliation is an integral part of that position. In this particular department, because it's such a large department, there are five ranks between lieutenant and the elected official, which is the sheriff. There is absolutely no evidence that a lieutenant is in a position of confidence with a sheriff  As the district court labeled them, there are low-level managers that are above the rank of deputy and sergeant with the positions of captain, commander, chief, assistant chief, undersheriff, between them and the sheriff's department. So if there was a rule that as a matter of law, lieutenants in the L.A. County Sheriff's Department are policymakers for Elrod or Brandon, in light of those cases, that would mean that hundreds of them could be summarily terminated if they voted or they supported the wrong elected official. And clearly that is not the case, and that is not in following what's supposed to be a narrow exception to First Amendment protection that's been held in Elrod. So I believe that the district court was correct in the application of the facts and the law in this case in determining that the argument that lieutenants are policymakers as a matter of law is just not supported in the case of a large department like this. Could you help me on another part of this before I forget it? Yes. When I ask questions, I refer to a disciplinary investigation and the responses were to a supervisory investigation. I don't really care what the proper name of the investigation is, but I'd like to know as a practical matter what the investigation is about, what it looks at. Does supervisory mean looking at somebody to see if he ought to be promoted to a supervisor, or does it mean looking at somebody to see if he did something bad that he should be punished for? My understanding from the record is that the supervisory investigation in this case was having the supervisor determine whether there was a rule that was violated when Sergeant Gomez went to the press conference. Did he ask for time off or did he not ask for time off? That was the issue. It wasn't whether he could make the speech or not make the speech. But as far as the time off and then determining, yes, he did ask. So it's not to decide about a promotion. It's to decide whether to punish somebody for violating a rule? That was what the supervisory investigation was. The criminal investigation is something at a higher level. What I'm asking about now is the supervisory investigation. If it was an investigation to see whether this fellow ought to be promoted, then I don't understand what the problem is. But if it's an investigation to decide whether they can find a rule to punish him for breaking, then I do see what the problem is. And I still don't really have it clear what a supervisory investigation is, what it does to somebody. In this case, the supervisory investigation was to determine whether it was a violation of a rule. And what do they do about a violation of a rule? Do they say, oh, I don't think you should be promoted because you violated a rule? Or do they say you should be punished because you violated a rule? It's two separate things. The supervisory investigation had nothing to do with the promotion. It had to do with whether there was a violation of a law or of a rule. And it's two separate times. What do they do about a violation of a rule? I'm sorry? What do they do about a violation of a rule? Do they just say, hmm, looks like it was a rule violation. That's very interesting. Do they do something about it? Is the thing they do about it? I don't think we'll give this fellow a promotion next year or a bonus. Or do they punish him? I don't know. And I don't know the answer to that because in this case they didn't find that it was a violation of a rule in the supervisory investigation, so it was put to rest once the supervisor came back and said there was no violation. He took the time off of the press conference. Do you know if they had found a violation? Is there some regulation or something that says what these things are for? See, I would know what it meant if I decided to run for the Senate against an incumbent senator and the U.S. attorney that he put in his office launches a grand jury investigation of me. Well, maybe the grand jury decides not to indict me, but it's still going to teach me a lesson about running against a senator if there's a grand jury investigation of me. I don't know because I know that if it goes the wrong way I'll get indicted. I don't know if supervisory investigation means that or if it means an investigation to see if Kleinfeld should be appointed to the district court. And I think the answer to that question is that I don't think there was necessarily an issue with a supervisory investigation because it's a very low-level look at whether there was an adverse employment action. Not the supervisory investigation. This is a criminal investigation, right? The request for one. Correct. And when did Mr. Gomez, when did he find out about that? I believe he found that out from Captain Rufus Tamayo in a conversation subsequent to the, when the supervisory investigation was happening. I believe that's when he found out that Under Sheriff Lawrence Waldie demanded that there be a criminal investigation. He wasn't happy with the fact that it got, it went to a much lower level of a supervisory investigation. And it's the criminal investigation that we were contending was the adverse employment action because that ruins a sheriff's, a deputy's career. But that was quashed immediately, right? I mean, Tamayo just said, we're not going to do that. Or whatever Judge Kleinfeld was playing out the scenario was probably right. But that went no further than that one conversation. Is that correct? That's correct. But it has the effect of knowing that an undersheriff attempted to initiate a criminal investigation. It has the deterrence factor of somebody that went out and spoke about something of public concern that here the undersheriff, second in command to the sheriff, attempted to have me investigated criminally. So that's part of the big picture of what the, of what Undersheriff Waldie did because he believed that Sergeant Gomez embarrassed the boss. Is it your contention that learning after Tamayo said he wouldn't do a criminal investigation, that no investigation had been done, was a violation of this man's constitutional rights and imposed emotional distress damages on him? Absolutely, Your Honor. And the emotional distress damages were indicated by some treatment for this? It had an effect on his career along with the non-promote and the involuntary transfer. It had an effect on knowing that there was an attempt, a very strong attempt, to have him investigated criminally. And I believe that's what the district court found goes to the level of sufficient facts that got it out of the... What was the causal relationship between the aborted criminal investigation and failure to promote? I thought that the promotion was done by the Executive Promotion Council, which brought up names and had seconds, et cetera. Was there any evidence from which a reasonable trial or fact could find that the criminal investigation, which was terminated before it started, had any causal effect on promotion? Absolutely. And who declared as to that? The evidence is that, first of all, we have to understand, Undersheriff Larry Walby, who's the one who's the defendant in this action, who's the one that demanded the criminal investigation, is the same person that when Sergeant Gomez's name came up in the promotional meeting said, not in my lifetime will he be promoted. And after that strong comment, there wasn't a... The lower-ranking chief didn't second the recommendation, and it was put to rest. So it's all the same individual, same person that initiated or tried to initiate a criminal investigation, but also the same person, defendant, that stated, not in my lifetime will he be promoted. And there's other evidence of his involvement with affecting Sergeant Gomez's career and retaliating against him for his speech and for what he determined. This would be evidence of subjective motivation, which was causative of failure to promote him. That's correct. That's correct. Along with him seeing this sign of Patrick Gomez, the sheriff, and saying get rid of that and we should transfer him out of the training division, we have evidence of that happening also. And the conversation between Lawrence Waldy and Sergeant Gomez, when Sergeant Gomez was not promoted and he asked what happened and questioned him about, is it true that you said, not in my lifetime will I not be promoted? And Lawrence Waldy said, you're not getting promoted. And he was very upset and said, aren't you getting it? You're not getting promoted. So there was a lot of evidence that the district court found that connected Under Sheriff Waldy with the retaliatory action against Sergeant Gomez because of what he labeled, he embarrassed the boss by his speech. If I got the procedural aspects right, there are a lot of things in the briefs that I'm not sure we would decide. It looks to me as though all we decide in this interlocutory appeal is whether there's qualified immunity so that the defendant does not have to go to trial or whether a jury will decide whether these things Gomez says are true or whether Waldy and whatever other defendants are in it were justified in what they did and in any event, no damages. You got that right? Yes. And I believe that under the Collins case, the Collins v. Jordan case and Johnson v. Jones case, looking at interlocutory appeals for do we have to decide anything different or more than whether taking all the facts most favorably to Gomez, Waldy, a reasonable policeman in Waldy's position, would not have known that he was violating the Constitution by taking the actions that taking the facts most favorably to Gomez he did. That's correct. I believe that the issues in front of this court are what they call abstract issues of law that whether under these facts, whether the actions of blocking the promotion of a LASD lieutenant is considered a constitutional violation and does it fall in the policymaking exception to that position and whether it was clearly established. Those answers have been clearly determined in the DeRusa case which was cited by the district court and that number one, it's been clearly established since 1976 that you cannot retaliate and block the promotion of a non-policymaking position. That's been clearly established. And just to address that one issue, what the defendants have done is tried to cloud the DeRusa case by saying that the law has not been clearly established because DeRusa said there's no per se description and we need to take it case by case. And they say, well, if there's no per se law or rule about which positions are policymaking or not policymaking, then that means the law is not clearly established. But DeRusa addressed that and stated, no, the law has been clearly established by the Ninth Circuit since 1976 and the law is that we look at the duties and the qualifications for that particular position. So where a lieutenant in a small town that's going to work with the sheriff may be a policymaker, but a lieutenant in a big department, one of the biggest departments in the country where there's hundreds of them and are five minutes away from the sheriff, is not going to be a policymaking. So that's what DeRusa states and the law has been clearly established. And I think that the biggest thing here is the county ordinance. It makes it a misdemeanor to do what under Sheriff Waldie did. And what I'd like to conclude is that when Larry Waldie took the actions that he did, he didn't block his promotion because he felt that a lieutenant is a policymaking position or that the law was not clearly established. He did it as the evidence states because he bearished the boss and he was going to block his promotion to that position. Thank you. Thank you. Your Honors, I just have two short and quick points. One is touching on the last argument of counsel about whether or not the law was clearly established. The appellees in the district court err for the same reason. They're dealing with the right in question at too high a level. Their general proposition is that, well, if they're not a policymaker, you can't retaliate against them. But I think the appropriate analysis is to look at, well, under the job responsibilities of a Los Angeles County Sheriff's Department lieutenant, was it – was Waldie's conduct reasonable? And would it be reasonable for him to believe his conduct was lawful under clearly established law? And we defend him, and the appellate argues that it is based on the arguments in the briefs. And the last issue was addressing Judge Kleinfeld's question about what issue the court would have to resolve. And I would agree with the – how the court frames it, and that would be after the Supreme Court's Pearson case. But also, the Pearson case leaves open the option in appropriate cases to decide the first problem, which is a constitutional violation. Thank you, Your Honors. Thank you. Gomez v. Waldie is submitted. We'll hear Miller v. Swanson.
judges: Kleinfeld, Bea, Ikuta